JULIUS SMITH,

          Plaintiff,

v.                                    Case No.  5:08-cv-386-Oc-GRJ

MICHAEL J. ASTRUE, Commissioner of Social
Security,

          Defendant.
_____/

## ORDER

Plaintiff appeals from a final decision of the Commissioner of Social Security ("the Commissioner") denying his applications for a period of disability, disability insurance benefits and supplemental security income. (Doc. 1.) The Commissioner has answered (Doc. 9), and both parties have filed briefs outlining their respective positions. (Docs. 16 & 19.)  For the reasons discussed below, the Commissioner's decision is due to be **REVERSED and REMANDED** under sentence four of 42 U.S.C. §405(g).

## I. PROCEDURAL HISTORY

Plaintiff filed an application for SSDI benefits in October 2003 alleging a disability onset date of August 19, 2003 and an application for SSI benefits in November  2003, alleging a disability onset date of December 2, 2002, which he later amended to July 26, 2004. (R. 109-12, 409-411, 452.)  Plaintiff's applications were denied initially and upon reconsideration. (R. 28-36, 43-44, 398-407.)   Thereafter, Plaintiff timely pursued his administrative remedies available before the Commissioner and requested a hearing before an Administrative Law Judge ("ALJ") (R. 41.) The ALJ conducted Plaintiff's

administrative hearing on October 19 2006. (R. 450-95.)  On January 10, 2007, the ALJ

issued a decision unfavorable to Plaintiff. (R. 18-24.)  Plaintiff's request for review of the

hearing decision by the Social Security Administration's Office of Hearings and Appeals

was denied.  (R. 7-10.)  Plaintiff then appealed to this Court. (Doc. 1.)

## II. STANDARD OF REVIEW

The Commissioner's findings of fact are conclusive if supported by substantial

evidence.[1] Substantial evidence is more than a scintilla, i.e., the evidence must do

more than merely create a suspicion of the existence of a fact, and must include such

relevant evidence as a reasonable person would accept as adequate to support the

conclusion.[2]

Where the Commissioner's decision is supported by substantial evidence, the

district court will affirm, even if the reviewer would have reached a contrary result as

finder of fact, and even if the reviewer finds that the evidence preponderates against the

Commissioner's decision.[3] The district court must view the evidence as a whole, taking

into account evidence favorable as well as unfavorable to the decision.[4] However, the

district court will reverse the Commissioner's decision on plenary review if the decision

applies incorrect law, or if the decision fails to provide the district court with sufficient

---

[1] See 42 U.S.C. § 405(g).

[2] Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing Walden v. Schweiker, 672 F.2d 835, 838 (11th Cir. 1982) and Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 28 L. Ed. 2d 842 (1971)); accord, Edwards v. Sullivan, 937 F.2d 580, 584 n.3 (11th Cir. 1991).

[3] Edwards, 937 F.2d at 584 n.3; Barnes v. Sullivan, 932 F.2d 1356, 1358 (11th Cir. 1991).

[4] Foote, 67 F.3d at 1560; accord, Lowery v. Sullivan, 979 F.2d 835, 837 (11th Cir. 1992) (holding that the court must scrutinize the entire record to determine reasonableness of factual findings); Parker v. Bowen, 793 F.2d 1177 (11th Cir. 1986) (finding that the court also must consider evidence detracting from evidence on which the Commissioner relied).

reasoning to determine that the Commissioner properly applied the law.[5]   The law

defines disability as the inability to do any substantial gainful activity by reason of any

medically determinable physical or mental impairment that can be expected to result in

death, or has lasted or can be expected to last for a continuous period of not less than

twelve months.[6] The impairment must be severe, making Plaintiff unable to do her

previous work, or any other substantial gainful activity which exists in the national

economy.[7]

The ALJ must follow five steps in evaluating a claim of disability.[8] First, if a

claimant is working at a substantial gainful activity, she is not disabled.[9] Second, if a

claimant does not have any impairment or combination of impairments which

significantly limit her physical or mental ability to do basic work activities, then she does

not have a severe impairment and is not disabled.[10] Third, if a claimant's impairments

meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, she is

disabled.[11] Fourth, if a claimant's impairments do not prevent her from doing past

---

[5] Keeton v. Dep't Health and Human Servs., 21 F.3d 1064, 1066 (11th Cir. 1994).

[6] 42 U.S.C. §§ 416(i), 423(d)(1); 20 C.F.R. § 404.1505.

[7] 42 U.S.C. § 423(d)(2); 20 C.F.R. §§ 404.1505-404.1511.

[8] 20 C.F.R. §§ 404.1520, 416.920. The claimant has the burden of proving the existence of a disability as defined by the Social Security Act. See Carnes v. Sullivan, 936 F.2d 1215, 1218 (11th Cir. 1991).

[9] 20 C.F.R. § 404.1520(b).

[10] 20 C.F.R. § 404.1520(c).

[11] 20 C.F.R. § 404.1520(d).

relevant work, she is not disabled.[12] Fifth, if a claimant's impairments (considering her RFC, age, education, and past work) prevent her from doing other work that exists in the national economy, then she is disabled.[13]

The burden of proof regarding the plaintiff's inability to perform past relevant work initially lies with the plaintiff.[14] The burden then temporarily shifts to the Commissioner to demonstrate that "other work" which the claimant can perform currently exists in the national economy.[15] The Commissioner may satisfy this burden by pointing to the grids for a conclusive determination that a claimant is disabled or not disabled.[16]

However, the ALJ should not exclusively rely on the grids when the claimant has a non-exertional impairment which significantly limits his or her basic work skills or when the claimant cannot perform a full range of employment at the appropriate level of exertion.[17] In a situation where both exertional and non-exertional impairments are

---

[12] 20 C.F.R. § 404.1520(e).

[13] 20 C.F.R. § 404.1520(f).

[14] Walker v. Bowen, 826 F.2d 996, 1002 (11th Cir. 1987). See also Doughty v. Apfel, 245 F.3d 1274, 1278 (11th Cir. 2001).

[15] Doughty at 1278 n.2 ("In practice, the burden temporarily shifts at step five to the Commissioner. The Commissioner must produce evidence that there is other work available in significant numbers in the national economy that the claimant has the capacity to perform. In order to be considered disabled, the claimant must then prove that he is unable to perform the jobs that the Commissioner lists. The temporary shifting of the burden to the Commissioner was initiated by the courts, and is not specifically provided for in the statutes or regulations.") (internal citations omitted).

[16] Walker at 1002 ("[T]he grids may come into play once the burden has shifted to the Commissioner to show that the claimant can perform other work.")

[17] Phillips v. Barnhart, 357 F. 3d 1232, 1243 (11th Cir. 2004); Wolfe v. Chater, 86 F.3d 1072, 1077 (11th Cir. 1996); Jones v. Apfel, 190 F.3d 1224, 1229 (11th Cir. 1999); Walker at 1003 ("the grids may be used only when each variable on the appropriate grid accurately describes the claimant's situation").

found, the ALJ is obligated to make specific findings as to whether they preclude a wide range of employment.[18]

The ALJ may use the grids as a framework to evaluate vocational factors so long as he introduces independent evidence of the existence of jobs in the national economy that the claimant can perform.[19] Such independent evidence may be introduced by a vocational expert's testimony, but this is not the exclusive means of introducing such evidence.[20] Only after the Commissioner meets this burden does the burden shift back to the claimant to show that he or she is not capable of performing the "other work" as set forth by the Commissioner.[21]

## III. <u>SUMMARY OF THE RECORD EVIDENCE</u>

At the time the ALJ issued his decision, Plaintiff was forty one (41) years old.  (R. 453.)  He has a high school education (R. 117) and previous work experience as a cook and a kitchen manager at a restaurant. (R. 22, 114, 459, 480-81.) Plaintiff contends that he has been unable to work since December 2, 2002 due to arthritis in his knee, ankle, hip, back and shoulder, as well as headaches. (R. 113.)  At the hearing, Plaintiff amended his onset date to July 26, 2004. (R. 452.)

In addition, since as early as 2001, Plaintiff has been treated for knee and neck pain. (R. 166-78, 208-11.  In August 2002, while Plaintiff's knee pain was resolved, he continued to report joint pain. (R. 156.)  In December 2003, Plaintiff went to the Shands

---

[18] <u>Walker</u> at 1003.

[19] <u>Wolfe</u> at 1077-78.

[20] <u>See</u> <u>id</u>.

[21] <u>See</u> <u>Doughty</u> at 1278 n.2.

Emergency room with complaints of low back pain and hip pain. (R. 195-202.)  Plaintiff continued to complain of lower back pain, hip pain, headaches and diffuse joint pain. (R. 213-14, 217-18, 220-21, 226-28, 233-35.)  In January 2004, Plaintiff was diagnosed with arthritis. (R. 235.)  He had a positive ANA with a speckled pattern. (R. 224, 237.) X-rays of the lumbar spine in January 2004 were normal and x-rays of the hips in February 2004 were normal. (R. 219, 225.) An MRI of the lumbar spine on May 11, 2004, showed mild degenerative changes with small midline bulge in the L5-S1 disk, otherwise essentially normal.  (R. 216.)

On April 1, 2004, Lance Chodosh, M.D. performed a consultative examination. (R. 242-47.) Dr. Chodosh noted Plaintiff's chronic active alcoholism and that Plaintiff consumes between 12 and 24 alcoholic drinks per day. (R. 242-43, 245.)  On examination, Dr. Chodosh found no evidence of impairment in shoulders and hips.  He opined that Plaintiff is able to see, hear, and speak normally; walk, stand and sit normally; stoop, lift, carry, squat, kneel and crawl; handle objects; travel; comprehend and follow directions; and relate normally to others. (R. 245.)

Beginning in July 2004, Plaintiff was treated at Citra Family Health by two certified physician's assistants – Lawrence Till and Barbara Murphree – for back pain, hip pain and muscle spasms.  (R. 281-86, 395-97.)  In August 2004, Plaintiff was diagnosed with chronic pain syndrome, rule out fibromyalgia and chronic fatigue syndrome. (R. 282.)  Treatment records consistently showed that Plaintiff was alert and oriented times three, pleasant and cooperative, and he had an appropriate mood and affect.

On November 9, 2004, Plaintiff was seen by Robert Greenberg, M.D., a pulmonologist. (R. 290-91.) Dr. Greenberg's impression was severe osteoarthritis of the lumbar spine and hips; probable osteoarthritis of the hands; atypical chest pain; and hypertension.

Beginning in November 2004, Plaintiff was treated by Ali Nasser, M.D. a cardiologist, for complaints of chest pain and shortness of breath. (R.324-25.) On examination, Plaintiff's joints, shoulders, elbows, wrists, knees and ankles were unremarkable for arthritis or any effusion. (R. 325.) Plaintiff was subsequently diagnosed with non-ischemic cardiomyopathy but the cause of the chest pain was undetermined. Left heart catheterization in February 2005 showed normal coronary vasculature, moderate LV dilation, global decreased LV systolic function, RAO ejection fraction of 30% and no evidence of methergine-induced coronary spasm. (R. 365-66.) In August 2005, Dr. Nasser diagnosed Plaintiff with compensated congestive heart failure but found no signs of congestive heart failure, and no evidence of significant lower extremity swelling. (R. 364.) Dr. Nasser noted that Plaintiff's functional capacity had improved on beta blockers and ACE inhibitors. On August 30, 2005, Dr. Nasser opined that Plaintiff could lift and/or carry 20 pounds occasionally and 10 pounds frequently, could sit 8 hours in an 8-hour workday, and stand and walk 2 to 3 hours in an 8-hour workday. (R. 303-26.)

On December 9, 2005, PA-C Till completed a "Treating Physician's Medical Assessment of Ability To Do Work-Related Activities" in which he opined that due to poor cardiac output and back pain, Plaintiff can lift and/or carry 5-10 pounds; stand and/or walk 1-2 hours in an 8-hour work day; sit 1-2 hours in an 8-hour work day;

occasionally climb, balance, stoop, crouch, kneel and crawl; push and pull with limitation; and has restrictions as to heights and moving machinery. (R. 348-52.) He further noted that Plaintiff requires rest periods every 1-2 hours and must elevate his legs for 30 minutes to an hour to alleviate pain.

On June 30, 2006, PA-C Murphee completed a "Treating Physician's Medical Assessment of Ability To Do Work-Related Activities" and opined that Plaintiff can lift and/or carry 5-10 pounds; stand and/or walk less than 1 hour; sit for 1-2 hours in an 8-hour workday; occasionally balance, stoop and crouch; never climb, kneel and crawl; and push and pull with limitation. (R. 371-77.) She also found that Plaintiff would require rest periods during the day for 30 minutes to 1 hour. Ms. Murphee noted that Plaintiff should avoid all exposure to heights; avoid even moderate exposure to moving machinery, temperature extremes, and humidity; and avoid concentrated exposure to chemicals, dusts, fumes and wetness.

In an undated letter, "to whom it may concern", PA-C Till and PA-C Murphree stated that Plaintiff was being treated for severe congestive heart failure and degenerative joint disease and that Plaintiff's cardiologist had recommended applying for disability and they "feel that this recommendation is in the patient's best interest." (R. 279.)

On August 3, 2006, Eftim Adhhami, M.D. examined Plaintiff. (R. 50-58, 378-86.) He found mild left ventricular failure and hypertension, both stable with treatment. On examination, Plaintiff showed no paravertebral muscle spasm; normal straight leg raising; normal deep tendon reflexes; full muscle strength; no muscle atrophy; no abnormal movements; some reduction in range of motion of the shoulders and left wrist,

with otherwise normal movement of the joints; normal walk; and no use of any assistive devices. (R. 378-79.) Dr. Adhami limited Plaintiff to light work activity, noting that Plaintiff has mild cardiac failure, cannot handle heavy loads, working very fast or working without breaks, and advised that Plaintiff should avoid very strenuous activity of any kind. (R. 383-86)

As for alleged mental impairments, on May 25, 2004, Andres Nazario, Jr., Ph.D. performed a consultative evaluation with mental status. (R. 256-74.) He noted that Plaintiff was alert and cooperative with an appropriate affect and intact memory, oriented times three, his judgment and insight seemed fair, and he was able to understand and follow directions and able to interact with others appropriately. (R. 258-59.) Plaintiff reported a long history of alcohol abuse, that he "looses [sic] control of his drinking" and that he was in treatment. He opined that it was "likely" that Plaintiff's memory difficulty was related to alcohol abuse. Dr. Nazario diagnosed alcohol dependence and adjustment disorder with anxiety and depressed mood. Dr. Nazario noted moderate difficulties in maintaining concentration, persistence, or pace. (R. 271.)

On December 2, 2004, Linda Abeles, Ph.D. performed a consultative evaluation with mental status. (R. 327-29.) Dr. Abeles noted that Plaintiff has a history of alcohol abuse; that it was difficult to establish rapport and the evaluation results were considered "questionable"; and that Plaintiff seemed to minimize his alcohol abuse and "may have not been completely candid during the interview." (R. 328-29.) On examination, Plaintiff was oriented to all four spheres, appeared to be functioning in the low average range of intelligence, and there was no indication of a psychotic or thought disorder. Dr. Abeles diagnosed alcohol dependence and antisocial personality disorder

but opined that Plaintiff's current level of psychological functioning would not preclude him from obtaining or maintaining employment

At the hearing on October 19, 2006, Plaintiff testified that he is unable to work due to dizziness, exhaustion and joint pain. (R. 462-63.)  Plaintiff testified that he gets dizzy after he does an activity for an hour or two (like walking) and gets exhausted. (R. 473-74.)  Plaintiff reported joint problems with his lower back, neck, knees, ankles and hands. (R. 476.)  Plaintiff reported his back pain as a 4 on a scale of zero to 10.  (R. 466.)

Plaintiff testified that at the advice of his doctor he stopped drinking in 2004 and completed a treatment program. (R. 464-65.)   Plaintiff reported that he can cook, vacuum, bathe and dress himself, lift his arms over his head, and bend down to pick up a newspaper off the floor. (R. 464, 468.)  He reported laying down for about four hours during a typical day. (R. 469.)

Based on his review of the record evidence, the ALJ found that Plaintiff's cardiomyopathy, alcohol abuse, and degenerative disc disease were severe impairments. (R. 20-21.)  However, the ALJ determined that Plaintiff did not have an impairment or combination of impairments which met or medically equaled one of the impairments listed in Appendix 1, Subpart P of Social Security Regulation No. 4. (R. 21.)

The ALJ then found that Plaintiff retained the RFC to perform low stress, repetitive, light work activity with moderate limitations in concentration.  (R. 21-22.)  The ALJ concluded that Plaintiff is unable to perform any past relevant work but that there are jobs that exist in significant numbers in the national economy that Plaintiff can

perform. (R. 22-23.)  Thus, the ALJ found that Plaintiff is not disabled.  In reaching this

conclusion, the ALJ relied on the testimony of a VE.

## IV. DISCUSSION

### A. The ALJ properly evaluated opinions of PA-C Till and PA-C Murphree

Plaintiff argues that the ALJ failed to properly consider the opinions of two

certified physician's assistants at Citra Family Health – Lawrence Till, PA-C and Barbara

Murphree, PA-C – both of whom completed forms entitled "Treating Physician's Medical

Assessment of Ability to do Work-Related Activities (Physical)" and limited Plaintiff to

less than sedentary work.  PA-C Till completed the form on December 9, 2005  (R. 371-

77) and PA-C Murphree completed the form on June 6, 2006. (R. 348-52.)[22]

While the ALJ noted PA-C Till's opinion, he mistakenly attributed the opinion to

PA-C Murphree and then only discredited the form completed by PA-C Murphree.  (R.

21, 22.)  However, because the two opinions were very similar and essentially

cumulative, the ALJ's analysis in rejecting PA-C Murphree's opinion at Exhibit 21F is

equally applicable to PA-C Till's opinion at Exhibit 16F.[23]  As discussed below, the ALJ

evaluated the evidence of record and determined that PA-C Murphree's opinion was

inconsistent with the other evidence of record and Plaintiff's activities of daily living. This

---

[22] PA-C Till and PA-C Murphree also signed an undated letter "to whom it may concern" in which
they stated that Plaintiff was being treated for severe congestive heart failure and degenerative joint
disease and that Plaintiff's cardiologist had recommended applying for disability and they "feel that this
recommendation is in the patient's best interest." (R. 279.)   Even if this letter can be construed as an
opinion by PA-C Till and PA-C Murphree that Plaintiff is disabled (see Doc. 16 at 11) – opinions as to
whether a claimant is disabled are not medical opinions but rather opinions on issues reserved for the
Commissioner. See 20 C.F.R. §§404.1527(e), 416.927(e). Accordingly, such opinion would not be entitled
to any weight.

[23] See Taylor v. Commissioner of Social Sec., 2008 WL 2776481, *8 (M.D. Fla. 2008)("[b]ecause
the opinions of the two nurse practitioners were essentially cumulative, there was no error in the ALJ's
failure to specifically discuss the weight given to [one of the two] opinions.")

11

finding was supported by substantial record evidence. Accordingly, a remand to have the ALJ note that the opinion at Exhibit 16F was actually from a different physician's assistant at the same practice as PA-C Murphree would serve no practical purpose, would not change the ALJ's decision, and would be a waste of judicial and administrative resources.

Pursuant to the regulations, physicians' assistants are not considered "acceptable medical sources," but rather "other sources," thus, evidence from physicians' assistants cannot establish the existence of an impairment and their opinions are not entitled to any special consideration.[24] However, in SSR 06-03p, the Social Security Administration acknowledged that opinions from other medical sources, including physicians assistants, are "important and should be evaluated on key issues such as impairment severity and functional effects, along with the other relevant evidence in the file."[25] The same factors for considering the opinions from "acceptable medical sources" can be applied to opinion evidence from "other sources" such as physicians' assistants.[26]

Here, the ALJ did not reject the opinions of PA-C Murphree and PA-C Till simply because they were unacceptable medical sources. Rather, the ALJ properly evaluated the evidence of record and articulated specific reasons, supported by substantial evidence, for according no weight to the opinions of PA-C Murphree and PA-C Till. (R.

---

[24] 20 C.F.R. §404.1513(a), (d)(1), 404.1527(a)(2), 416.913(a),(d)(1), 416.927(a)(2).

[25] SSR 06-03p; Frantz v. Astrue, 509 F.3d 1299 (10th Cir. 2007); 20 C.F.R. §§404.1513(d), 416.913(d).

[26] SSR 06-03p.

22.)  First, the ALJ found that the opinion was not supported by any objective clinical signs, diagnostic studies, or laboratory findings.  Further, the ALJ stated that the findings essentially described an individually nearly bedridden all day, which was not supported by the objective medical evidence.  Finally, the ALJ noted that Plaintiff's activities of daily living were evidence of a much more active individual.

In addition, the ALJ accorded controlling weight to Ali Nasser, M.D. – Plaintiff's treating cardiologist -- and consultative examiner, Eftim Adhami, M.D.[27] The ALJ correctly noted that these opinions limited Plaintiff to a full range of light work, or at least a heightened range of sedentary work activity. (R. 22, 303, 325, 378-86.)   In August 2005 – after treating Plaintiff for almost nine months -- Dr. Nasser opined that Plaintiff could lift and/or carry 20 pounds occasionally and 10 pounds frequently, could sit 8 hours in an 8-hour workday, and stand and walk 2 to 3 hours in an 8-hour workday. (R. 303.)

Likewise, Dr. Adhami examined Plaintiff on August 3, 2006 and found mild left ventricular failure and hypertension, both stable with treatment. On examination, Plaintiff showed no paravertebral muscle spasm; normal straight leg raising; normal deep tendon reflexes; full muscle strength; no muscle atrophy; no abnormal movements; some reduction in range of motion of the shoulders and left wrist, with otherwise normal movement of the joints; normal walk; and no use of any assistive devices. (R. 378-79.) Dr. Adhami found that Plaintiff could lift and/or carry 25 pounds occasionally and 20

---

[27] At one place in his Decision, the ALJ refers to Dr. Adhami as a treating physician. However, the record appears to reflect that Dr. Adhami only consultatively examined Plaintiff on August 3, 2006. (R. 22, 378.)  This error was harmless since Dr. Adhami's opinion was consistent with the opinion of treating physician Dr. Nasser.

pounds frequently, could sit 8 hours in an 8-hour workday, and stand and/or walk at least 2 hours in an 8-hour workday. Dr. Adhami noted that Plaintiff has mild cardiac failure, cannot handle heavy loads, working very fast or working without breaks, and advised that Plaintiff should avoid very strenuous activity of any kind. (R. 383-86)

Accordingly, the Court concludes that the ALJ properly considered the opinion of PA-C Murphree and substantial evidence supported the ALJ's decision to discredit her opinion. Further, even though the ALJ did not address the opinion of PA-C Till there was no error because the ALJ's analysis of PA-C Murphree's opinion equally applied to the similar and essentially cumulative opinion of PA-C Till.

**B. The ALJ properly considered Plaintiff's mental impairments**

Plaintiff argues that the ALJ failed to evaluate properly Plaintiff's mental impairments. Plaintiff argues that the ALJ improperly found Plaintiff suffered from no severe mental impairment, failed to engage in the required regulatory analysis for evaluating mental impairments, and failed to consider the opinion of a non-examining state agency psychologist

At step 2, the ALJ found that Plaintiff had severe impairments including alcohol abuse. (R. 20-21.) Plaintiff argues that Plaintiff also has a severe unspecified mental impairment. However, substantial evidence supports the ALJ's finding that Plaintiff does not have a "severe" mental impairment.

The ALJ noted Plaintiff's undisputed history of alcohol abuse and found that as a result of his extended history of chronic alcoholism, Plaintiff had moderate limitations in concentration. (R. 20-21.) The ALJ also discussed Plaintiff's alleged "emotional impairment" and noted that Plaintiff related well to the ALJ at the hearing and answered

questions quickly and appropriately without any evidence of a memory or concentration problem and that there was no obvious evidence of any significantly limiting mental or emotional problem demonstrated during the course of the hearing. (R. 22.)

These findings were consistent with the consultative examinations by Dr. Nazario on May 25, 2004 (R. 256 -74) and Dr. Abeles on December 2, 2004. (R. 327-29.)  Dr. Nazario noted that Plaintiff was alert and cooperative with an appropriate affect and intact memory, oriented times three, and his judgment and insight seemed fair. (R. 258, 259.)  Plaintiff was able to understand and follow directions and able to interact with others appropriately. (R. 259.)   Dr. Nazario noted that Plaintiff reported a long history of alcohol abuse, that he "looses [sic] control of his drinking" and that he was in treatment. He opined that it was "likely" that Plaintiff's memory difficulty was related to alcohol abuse. (R. 259.)   Dr. Nazario diagnosed alcohol dependence and adjustment disorder with anxiety and depressed mood. Dr. Nazario noted moderate difficulties in maintaining concentration, persistence, or pace. (R. 271.)

 Dr. Abeles noted that Plaintiff has a history of alcohol abuse; that it was difficult to establish rapport and the evaluation results were considered "questionable"; and that Plaintiff seemed to minimize his alcohol abuse and "may have not been completely candid during the interview."  (R. 328-29.)  On examination, Plaintiff was oriented to all four spheres, appeared to be functioning in the low average range of intelligence, and there was no indication of a psychotic or thought disorder.  Dr. Abeles diagnosed alcohol dependence and antisocial personality disorder but opined that Plaintiff's current level of psychological functioning would not preclude him from obtaining or maintaining employment.

Although not specifically discussed by the ALJ, other record medical evidence reflects few or no symptoms of a mental impairment. In September 2003, Plaintiff's judgment, affect and mood were normal. (R. 205.) Treatment records from Citra Family Health consistently showed that Plaintiff was alert and oriented times three, pleasant and cooperative, and he had an appropriate mood and affect. (R. 281-83, 395-97.)

Plaintiff contends that the ALJ erred because he failed to explain why he was not crediting the opinion of a state agency psychological expert, Gary W. Buffone, Ph.D. (R. 330-43, 344-47.) Dr. Buffone reviewed the medical evidence and opined that Plaintiff was moderately limited in his ability to follow detailed instructions, maintain attention and concentration for extended periods, complete a normal workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods, interact with the general public, and accept instructions and respond appropriately to criticism from supervisors. (R. 344-45.)

While the ALJ did not specifically address Dr. Buffone's opinion, he stated that he carefully considered all of the evidence. (R. 18.) As discussed above, there is no evidence suggesting that Plaintiff has any mental or emotional problems that limited his ability to work. Moreover, Dr. Buffone's opinion was not inconsistent with the ALJ's RFC finding. Indeed, Dr. Buffone clarified that while Plaintiff may have difficulty with tasks requiring sustained focus and complex mental demands, he remains capable of carrying out simple instructions and routine/repetitive tasks; and that while he may have problems with authority and intense/prolonged social contact, he is able to interact appropriately on a limited basis. (R. 346.)

16

Accordingly, the record does not reveal mental health or emotional problems that would have interfered with Plaintiff's ability to work. Nevertheless, Plaintiff contends that the ALJ failed to follow the procedure set forth in the regulations for evaluating mental impairments – i.e., use of the psychiatric review technique in evaluating the severity of mental impairments for adults at each level in the administrative process.[28]   As discussed above, there does not appear to be any evidence suggesting that Plaintiff has a mental impairment, other than symptoms related to his alcohol abuse.  Indeed, the only mental or emotional limitations found by the ALJ were moderate limitations in concentration resulting from Plaintiff's alcohol abuse. (R. 21.)  The Social Security Act precludes the award of benefits when alcohol abuse is found to be a contributing factor material to a finding of disability.[29] Thus, any limitations Plaintiff has as a result of his alcohol abuse cannot be considered as a basis for establishing disability.  As such, even if the ALJ performed the PRTF analysis and found extreme limitations stemming from his alcohol abuse – which the record does not support – those limitations could not be the basis for finding Plaintiff disabled.

Accordingly, the ALJ did not err in his consideration of Plaintiff's alleged mental impairment.

### C. The VE's testimony does not provide substantial evidence

In order for a VE's testimony in response to a hypothetical question to serve as substantial evidence in support of the conclusion that a claimant can perform other

---

[28]20 C.F.R. §§404.1520a, 416.920a.

[29] <u>See</u> 42 U.S.C. §§423(d)(2)(C), 1382c(a)(3)(J); 20 C.F.R. §§404.1535, 416.935; <u>Doughty v. Apfel</u>, 245 F.3d 1274, 1275 (11th Cir. 2001.)

work, the question must accurately portray a claimant's physical and mental impairments.[30] Here, the ALJ relied on the VE's testimony in response to a hypothetical question. The hypothetical question in pertinent part, asked the VE to "assume the individual would require work which is low-stress, simple, unskilled one, two or three-step instructions." (R. 485.) In a second hypothetical, the ALJ added that the individual's "psychologically based symptoms affect[ ] his ability to concentrate upon complex or detailed tasks, but he would remain capable of understanding and remembering and carrying out simple job instructions." (R. 488.)

The requirement of "repetitive" work – which the ALJ included in his RFC determination – was not included in the hypothetical to the VE. Nevertheless, without any support or citation to authority, the Commissioner suggests that a limitation to work that involves "one, two or three-step instructions" is consistent with the RFC limitation to repetitive work. While these two limitations may be related, they are by no means the same thing. The Eleventh Circuit has found that a limitation to repetitive tasks is not contained within the definition of unskilled – and thus, it is an additional non-exertional limitation that must be considered.[31] Accordingly, the ALJ's hypothetical to the VE was

_____

[30] See Sullivan v. Commissioner of Social Sec., 2009 WL 4064190, *2 (11th Cir. 2009.)

[31] See Vuxta v. Commissioner of Social Sec., 194 Fed.Appx. 874, 2006 WL 2578705, *3 (11th Cir. 2006.) The Commissioner attempts to distinguish Vuxta because the ALJ in that case relied on the Grids in finding Plaintiff not disabled. However, this is not a significant distinction. In Vuxta, the ALJ determined that the claimant's exertional RFC was for light work and her nonexertional RFC was for unskilled work. The ALJ found that Vuxta "remained capable of performing simple repetitive tasks in a competitive work environment." On appeal, Vuxta argued that this finding formed two additional nonexertional limitations – i.e. that Vuxta could only perform simple tasks and that she could only perform repetitive tasks. The Vuxta court found that a limitation to simple tasks was contained within the unskilled limitation, and thus, required no additional treatment from the ALJ. However, the Court held that a limitation to repetitive tasks was not contained within the definition of unskilled; and thus, the ALJ must determine whether a limitation to repetitive tasks significantly limited Vuxta's basic work skills before relying on the grids.

incomplete and, thus, the VE's testimony was not substantial evidence to support the ALJ's conclusion that Plaintiff could perform other work.

Likewise, in the hypothetical, the ALJ limited Plaintiff to "low-stress" work, which appeared to be an additional non-exertional limitation. However, when the VE was asked to explain his understanding of "low stress," he stated that unskilled jobs are "essentially low-stress." (R. 492.) To the extent the ALJ was imposing an additional non-exertional limitation – over and beyond the definition of unskilled work – that should be clarified on remand.

Plaintiff also argues that the ALJ failed to explain and resolve conflicts between the VE's testimony and the DOT as required by Social Security Ruling ("SSR") 00-04p. Specifically, Plaintiff contends that the ALJ's finding that Plaintiff was limited to "one, two or three-step instructions" was inconsistent with the DOT that states that the occupations identified by the VE have reasoning levels requiring greater capacity than the ability to perform simple, one, two or three step instructions.

In Jones v. Apfel,[32] the Eleventh Circuit held that an ALJ may rely upon the testimony of a VE without first resolving any conflict with the DOT. Although SSR 00-04p was promulgated after Jones was decided, it does not undo the rule in Jones[33] nor does SSR 00-04p expressly mandate that an ALJ has a duty to independently

---

[32] See Jones v. Apfel, 190 F.3d 1224, 1229-30 (11th Cir. 1999.)

[33] After the promulgation of SSR 00-04p, the Eleventh Circuit held in an unpublished opinion that because social security rulings do not bind the courts, even where an inconsistency exists between the testimony of a VE and the DOT, an ALJ is entitled to rely upon the testimony of the VE, without first resolving the conflict. See Miller v. Comm'r of Soc. Sec., No. 07-11364, 2007 WL 2461771, at *2 (11th Cir. Aug. 31, 2007.) The Court reasoned that the rule in Jones – that the "VE's testimony trumps the DOT" – is binding precedent in this Circuit, notwithstanding the promulgation of SSR 00-4p.

investigate whether there is a conflict between the VE's testimony and the DOT. Rather, SSR 00-04p merely obligates the ALJ to ask the VE if there is a conflict and if the VE identifies a conflict the ALJ is required then – and only then – to address the conflict in his decision and resolve it.[34]

Here, the ALJ specifically stated to the VE during the hearing, "if there are any conflicts with the information that you provide with the Dictionary of Occupational Titles including its companion publication the Selected Characteristics of Occupations defined in the revised Dictionary of Occupational Titles that you so advise me. Otherwise I will assume there are no such conflicts. Is that fair." (R. 485.) To which, the VE responded "Yes, Your Honor." During the hearing, the VE did not identify any conflicts between his testimony and the DOT. Nor did the Plaintiff (who was represented by counsel) challenge the VE as to how Plaintiff could perform occupations with reasoning levels of 2 and 3. Because the ALJ had no obligation to resolve a conflict that was not identified at the hearing, and that was not otherwise apparent, and in view of the fact that the law in this Circuit provides that an ALJ may rely upon the testimony of a VE even if it is in conflict with the DOT, the ALJ was not required to resolve the alleged conflicts.

---

[34] See, e.g., Martin v. Commissioner of Social Security, 170 Fed. Appx. 369, 2006 WL 509393, at *4-5 (6th Cir. 2006)(unpublished)(holding that "[n]othing in SSR-004p places an affirmative duty on the ALJ to conduct an independent investigation into the testimony of witnesses to determine if they are correct" and therefore "[b]ecause [theVE] did not bring the conflict to the attention of the ALJ, the ALJ did not need to explain how the conflict was resolved."); Haas v. Barnhart, 91 Fed. Appx. 942, 947-48 (5th Cir. 2004)(where conflict not brought to the attention of the ALJ it was not reversible error for the ALJ to rely upon the testimony of the VE); Gibbons v. Barnhart, 85 Fed. Appx. 88, 93 (10th Cir. 2003)(no error under SSR 004p where the VE did not identify conflicts with the DOT); Brijbag v. Astrue, No. 8:06-cv-2356-T-MAP, 2008 WL 276038, at *2 (M.D. Fla. Jan. 31, 2008)("the ALJ need not independently corroborate the VE's testimony and should be able to rely on such testimony where no apparent conflict exists with the DOT"); Lembke v. Barnhart, 2006 WL 3834104 *15 (W.D. Wis. 2006)(reversal is not warranted where plaintiff identifies a conflict after the hearing but during the hearing no conflict was identified so long as the ALJ complied with SSR-004p by asking the VE at the hearing to identify conflicts);

However, because this matter is being remanded for the ALJ to reconsider, at step five, whether jobs exist consistent with Plaintiff's limitations, the ALJ will have the opportunity to resolve any inconsistencies between Plaintiff's RFC and the applicable reasoning levels.

## V.  CONCLUSION

In view of the foregoing, the decision of the Commissioner is **REVERSED AND REMANDED** under sentence four of 42 U.S.C. § 405(g) to the Commissioner for the Administrative Law Judge to determine at step five of the sequential evaluation whether jobs exist consistent with Plaintiff's limitations and to conduct any additional proceedings the Commissioner deems appropriate. The Clerk is directed to enter judgment accordingly and close the file.

**IT IS SO ORDERED.**

**DONE AND ORDERED** in Ocala, Florida, on March 24, 2010.

GARY R. JONES
United States Magistrate Judge

Copies to:
    All Counsel